UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Respondent,<br><br>    v.<br><br>JOSEPH MENCHACA,<br><br>    Defendant/Movant. | Case No. 12-cr-00454-PJH-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. Nos. 72, 76 |

Before the court is the motion of defendant Joseph Menchaca for reduction of sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Defendant initially filed a pro se motion, after which counsel entered an appearance and filed a supplemental brief in support of the motion. See Dkt. 72, 76. The government filed an opposition to the motion for compassionate release, and counsel for defendant filed a reply. See Dkt. 79, 81. The Probation Office also provided a response to the compassionate release motion. See Dkt. 78. Having considered the relevant authorities and having reviewed the record and the parties' papers, the court DENIES the motion for compassionate release for the reasons set forth below.

I.   **BACKGROUND**

On June 7, 2012, defendant was charged with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). See Dkt. 1. On October 4, 2012, a superseding information was filed, adding a second count of

possession with intent to distribute methamphetamine.  See Dkt. 20.

Defendant entered a guilty plea on November 12, 2012, pursuant to a written plea agreement.  See Dkt. 32.  In the plea agreement, the parties agreed to a sentence of 168 months.  Id.  The probation officer determined that defendant qualified as a career offender, and that the Guidelines range for his offenses was 188-235 months imprisonment.  See Dkt. 36 at 2; Dkt. 54 at 2.  At sentencing, the government abided by the terms of the plea agreement and recommended a below-Guidelines sentence of 168 months.  Dkt. 36 at 2.  On January 30, 2013, the court sentenced defendant to a term of 168 months of imprisonment, followed by four years of supervised release, with a condition of release being participation in a drug testing and treatment program.  See Dkt. 39.

Defendant is presently in the custody of the Bureau of Prisons ("BOP") at FCI Safford.  Defendant has served approximately nine years and two months of his sentence.  Dkt. 76, Ex. F.  Defendant has approximately 34 months remaining on his prison term, based on a projected release date of May 25, 2024.  Dkt. 79 at 2.  He now seeks a reduction of sentence pursuant to the compassionate release provision of § 3582(c)(1)(A) based on three reasons: (1) his father's incapacitation and need for a caregiver, (2) his concerns about conditions of incarceration during the COVID-19 pandemic, and (3) his post-offense conduct while in custody.  See Dkt. 76 at 1.

II.     **DISCUSSION**

   A.     **Legal Standard**

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.  United States v. Penna, 319 F.3d 509, 511 (9th Cir. 2003).  The court may modify a previously imposed sentence upon motion of the BOP or motion of the defendant under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act which added a provision to allow defendants, not only the Director of the BOP, to file a motion for reduction of sentence after exhausting

administrative remedies or waiting 30 days after the warden's receipt of a request. See United States v. Rodriguez, 424 F.Supp.3d 674, 680 (N.D. Cal. 2019). Section 3582(c)(1)(A)(i) now provides that the court may reduce an imposed term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," after considering the applicable factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

### B. Requirements for Relief

As applicable to defendant's motion, compassionate release is warranted if the court finds that extraordinary and compelling reasons warrant such a reduction, after considering the applicable § 3553(a) factors.[1]

As mentioned above, before the First Step Act, only the BOP director could file a motion for compassionate release. Those motions were governed by the applicable policy statement at United States Sentencing Guideline § 1B1.13. Indeed, the opening language of § 1B1.13 is: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)." (emphasis added). The policy statement then set forth the test for courts to apply when ruling on those motions, including a determination that extraordinary and compelling reasons warranted the reduction, and that the defendant is not a danger to public safety. The policy statement included commentary with application notes, which set forth specific circumstances that would qualify as "extraordinary and compelling" based on the defendant's (1) medical condition, (2) age, or (3) family circumstances. U.S.S.G. § 1B1.13, cmt. n.1.

---

[1] As a threshold matter, the government concedes that defendant has met the administrative exhaustion requirement for purposes of this motion. See Dkt. 79 at 2.

When the First Step Act amended section 3582, it was unclear whether § 1B1.13 remained an "applicable" policy statement. At first, many courts, including this one, found that § 1B1.13 was applicable even to defendant-filed motions. See, e.g., United States v. Eberhart, 448 F.Supp.3d 1086 (N.D. Cal. 2020). However, numerous circuit courts, including the Ninth Circuit, have now concluded that the current version of § 1B1.13 "is not an applicable policy statement" for defendant-filed motions for compassionate release. See United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021); see also United States v. Brooker, 976 F.3d 228 (2nd Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).

While the § 1B1.13 policy statement is no longer binding, it may still "inform a district court's discretion" for what constitutes extraordinary and compelling reasons warranting release. See Aruda, 993 F.3d at 802.

### 1.  Extraordinary and Compelling Reasons

Although section 3582(c)(1)(A)(i) does not define what constitutes "extraordinary and compelling circumstances," the application notes to the § 1B1.13 policy statement identify three sets of such circumstances: "medical condition of the defendant," "age of the defendant," and "family circumstances." U.S.S.G. § 1B1.13, cmt. n.1. As discussed above, because the policy statement is not binding, courts may consider those identified circumstances, but are not bound by them.

Defendant's first argument is that his father is incapacitated and no longer able to care for himself, and that defendant is needed to serve as his caregiver. This argument relates to the "family circumstances" prong of the policy statement. The policy statement provides that the "death or incapacitation of the caregiver of the defendant's minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be [that person's] only available caregiver" constitute extraordinary and compelling circumstances for purposes of compassionate release. U.S.S.G. § 1B1.13, cmt. n.1(C).

As the government points out, the incapacitation of a parent is not among the family circumstances identified in the policy statement. See Dkt. 79 at 6. However, because the policy statement is no longer binding, the court will not automatically reject defendant's argument that the incapacitation of his father constitutes extraordinary and compelling family circumstances warranting compassionate release.

On the merits of defendant's "family circumstances" argument, the government argues that defendant is not the only available caregiver for his father, because defendant's fiancée and her son are currently providing care for defendant's father. Dkt. 79 at 8. The government further points out that friends of the defendant have provided financial support to defendant's father. Id. The government thus argues that "[t]he availability of support for defendant's father further undermines defendant's claim that his care is so essential that it rises to the level of extraordinary and compelling circumstances." Id.

Defendant responds by arguing that "the mere existence of another relative or close person does not necessarily mean that another caregiver is reasonably available, or is fairly capable of continuing the burden of care." Dkt. 76 at 8 (citing United States v. Hernandez, 2020 WL 4343991 (S.D. Fla. Apr. 3, 2020)). Defendant further argues that his fiancée "has no obligation to continue" to provide care to defendant's father, and that she "deserves a respite." Dkt. 76 at 9.

While the court agrees that defendant's fiancée has no obligation to care for defendant's father, the fact remains that defendant is not "the only available caregiver" as contemplated by the § 1B1.13 policy statement, which the court finds persuasive in this context. See U.S.S.G. § 1B1.13, cmt. n.1(C)(ii). While the court is willing to go beyond the policy statement and consider the incapacitation of a parent as a possible basis for extraordinary and compelling circumstances, the court does not find extraordinary and compelling circumstances based on the specific family circumstances of defendant and his father.

Defendant's second argument is that the conditions of confinement during the

COVID-19 pandemic present additional extraordinary and compelling circumstances warranting release. The policy statement identifies the "medical condition of the defendant" as a type of extraordinary and compelling circumstance. Specifically, the policy statement defines physical or medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). Again, while the policy statement is no longer binding, the court does find it persuasive.

Defendant explains that he contracted the coronavirus in December 2020, and while he acknowledges that his infection "was not severe," he argues that the pandemic-related lockdowns prevented him from earning time credits. Dkt. 76 at 9. In his reply, defendant clarifies that he "does not argue for a sentence reduction based on the risk of reinfection," but rather that the "BOP's failure to protect him" from contracting the virus has "rendered the court's original sentence harsher and more punitive" than originally anticipated. Dkt. 81 at 5-6.

The government argues that the fact that defendant was asymptomatic and already recovered from the virus "alone defeats his argument for extraordinary and compelling COVID-19-related circumstances justifying his release." Dkt. 79 at 9.

The court finds that defendant has not shown that he faces any medical risk from continued incarceration, and the court rejects the blanket argument that the existence of COVID-19 renders every prisoner's sentence "more punitive" and in need of reduction. Accordingly, the court finds that the COVID-related conditions of confinement do not constitute extraordinary and compelling circumstances warranting compassionate release.

Defendant's third argument is that his rehabilitative efforts, in combination with the

other factors[2], constitute extraordinary and compelling circumstances.  Defendant points to his participation in employment and educational programs and his continuous employment while in custody.  Dkt. 76 at 12-13.

The government argues that defendant has had "numerous disciplinary infractions, including a finding of stealing and two findings that he possessed gambling materials in violation of prison policies."  Dkt. 79 at 10.

While the court finds defendant's rehabilitative efforts laudable, they do not constitute extraordinary and compelling circumstances warranting compassionate release, either alone or in combination with the other circumstances identified by defendant.  The court further notes that, even if the court were to find that the totality of the circumstances presented by defendant were sufficiently extraordinary and compelling to warrant release, his motion would still be denied due to the court's consideration of the § 3553(a) sentencing factors, described as follows.

### 2. Section 3553(a) Factors

Having considered the applicable § 3553(a) factors, the court further finds that a reduction of defendant's sentence would not serve the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, or to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See 18 U.S.C. § 3553(a)(2)(A)–(C).

Looking to the nature and circumstances of the offense and the history and characteristics of the defendant, defendant was arrested with 195 grams of methamphetamine and a .380 caliber semi-automatic handgun.  Dkt. 32 at 4.  At the time of sentencing, defendant was found to be a career offender with a criminal offense score of 31 and a criminal history category of VI.  Dkt. 35 at 2, 5.  Defendant's Guideline sentence was 188 to 235 months.  See Dkt. 36 at 2; Dkt. 54 at 2.  However, the

---

[2] Defendant acknowledges that rehabilitation alone is not a valid basis for sentence reduction.  Dkt. 76 at 11.

7

government recommended a total sentence of 168 months pursuant to the parties' plea agreement, and the court sentenced defendant to 168 months imprisonment.  See Dkt. 39.

Given that defendant's lowest possible Guideline sentence would have been 188 months, the court finds that a reduction of the sentence to 110 months (or 125 months, including good time credits) would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct.  Moreover, especially in light of defendant's career offender status, a reduction would create an unwarranted disparity among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).

On balance, the court finds that the relevant § 3553(a) factors do not support defendant's request for a reduction in sentence.

### III.   CONCLUSION

For the reasons set forth above, the motion for reduction of sentence pursuant to the compassionate release provision of § 3582(c)(1)(A) is DENIED.

Defendant has also filed a motion to seal exhibits that include personally identifying information and medical information.  See Dkt. 80.  Defendant's motion to seal is GRANTED.

**IT IS SO ORDERED.**

Dated:  July 30, 2021

                                               /s/ *Phyllis J. Hamilton*
                                         PHYLLIS J. HAMILTON
                                         United States District Judge